UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 13bk42168 |
| | ) | |
| CHARLES WALKER, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |
| | ) | |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

The matter before the court arises out of a Motion to Dismiss Case for Ineligibility (the "Motion"), filed by Marilyn O. Marshall (the "Trustee"), the standing chapter 13 trustee assigned to this case, against Charles Walker (the "Debtor"), who is unrepresented in this case. For the reasons set forth herein, the court denies the Motion.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the United States Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). A motion to dismiss a bankruptcy case is unique to bankruptcy administration and arises only in a bankruptcy case. As such, such a motion is unquestionably a core proceeding and within the bankruptcy court's statutory and constitutional jurisdiction. 28 U.S.C. § 157(b)(2)(A); *In re Gossett*, 369 B.R. 361, 364 (Bankr. N.D. Ill. 2007) (Squires, J.); *In re Luedtke*, 337 B.R. 918, 919 (Bankr. E.D. Wis. 2006).

Accordingly, final judgment is within the scope of the court's authority.

BACKGROUND

The facts and procedural history of this matter are simple and undisputed. On October 29, 2013, the Debtor commenced the above-captioned case by filing a petition under chapter 13 of the Bankruptcy Code. Later that same day, the Debtor obtained the credit counseling described in

1

section 109(h)(1) of the Bankruptcy Code, and later in the case filed a certificate of credit counseling evidencing the same.

The Trustee has taken the position that the Debtor's credit counseling is untimely and thus dismissal is appropriate pursuant to 11 U.S.C. § 1307 and § 109(h). At a hearing on the matter in November of this year, the court expressed its concerns regarding the wording of section 109(h)(1). Though the Debtor failed to appear, given that the Debtor is *pro se*, the court determined to investigate further the issue. This Memorandum Decision is the result.

## DISCUSSION

> [T]he [Bankruptcy] Act must be liberally construed to give the debtor the full measure of the relief afforded by Congress..., lest its benefits be frittered away by narrow formalistic interpretations which disregard the spirit and the letter of the Act.

*Wright v. Union Cent. Life Ins. Co.*, 311 U.S. 273, 279 (1940).

\*   \*   \*

The question of whether a debtor may avail itself of bankruptcy relief is the most fundamentally important question in all of bankruptcy. If the answer is "no," then no other question matters. Only if the answer is "yes" does the court move on to issues such as equality of distribution to similarly situated creditors and the debtor's fresh start – the so-called "twin pillars of bankruptcy law." R. Ginsberg & R. Martin, GINSBERG & MARTIN ON BANKRUPTCY, § 1.01[H] (5th ed. 2013).

Concurrent with this Memorandum Decision, Judge Steven W. Rhodes of the United States Bankruptcy Court for the Eastern District of Michigan has issued his decision regarding the eligibility of the City of Detroit to be a debtor under chapter 9 of the Bankruptcy Code. That decision numbers more than 150 pages. Economies of scale govern and, as a result, this Memorandum Decision is far shorter. Nonetheless, each decision addresses section 109 of the Bankruptcy Code and the result of each decision is for the respective debtor, crucial.

With these overriding principles in mind, the court will begin its analysis of the issue at bar.

A.   <u>The Plain Language of Section 109(h)(1).</u>

The Supreme Court has stated that "[t]he task of resolving [a] dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989); *In re Randle*, 358 B.R. 360, 362 (Bankr. N.D. Ill. 2006) (Doyle, J.), *aff'd*, No. 07C631, 2007 WL 2668727 (N.D. Ill. July 20, 2007). Where the language of the statute is unambiguous, no further inquiry is necessary or appropriate. *Sebelius v. Cloer*, 659 U.S. ___, ___, 133 S.Ct. 1886, 1895 (2013); *In re Vecera*, 430 B.R. 840, 842 (Bankr. S.D. Ind. 2010) (*citing Griffin v. Oceanic, Inc.*, 458 U.S. 564, 570 (1982)). Absent contrary definitions within the statute itself, words in a statute are presumed to have their "ordinary, contemporary, common meaning." *Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380, 388 (1993) (*citing Perrin v. United States*, 444 U.S. 37, 42 (1979)).

Our inquiry begins, therefore, with the statute itself.

2

Section 109(h)(1) reads, in pertinent part:[1]

> [A]n individual may not be a debtor under this title unless such individual has, during the *180-day period ending on the **date** of filing of the petition* by such individual, received from an approved nonprofit budget and credit counseling agency ... an individual or group briefing ... that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis.

11 U.S.C. § 109(h)(1) (emphasis added). As discussed below, section 109(h) is a relatively new provision of the Bankruptcy Code seeking to have debtors obtain credit counseling as a condition to bankruptcy relief. It is one of two such requirements in chapter 13; the second being a condition to receiving its discharge that the debtor, "after filing of the petition," complete a personal financial management course. 11 U.S.C. § 1328(g)(1).

The language emphasized above clearly states that a debtor has 180 days to receive credit counseling, and that 180-day period ends on "the date of filing of the petition." 11 U.S.C. § 109(h)(1). It is this phrase that creates the problem before the court.

There are those who advocate reading section 109(h)(1) as a precondition to filing a petition (hence, *commencing* a case). Such persons advocate a reading of the emphasized phrase akin to "ending on the date and time of the filing of the petition" or "ending with the filing of the petition" or "ending at the moment of filing." Had Congress chosen any of those phrases, such a reading would make sense.

However, such a reading is not consistent with the plain language of the term "date." Black's Law Dictionary defines "date" as "[t]he day when an event happened or will happen...."

---

[1]     Section 109(h) itself is captioned "Who may be a debtor." Controlling law dictates "that the title of a statute and the heading of a section cannot limit the plain meaning of the text." *Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528-29 (1947). Nonetheless, it has been suggested that this heading defines the purpose of the section and should be used to interpret the text therein. It is further suggested that, as is set forth in more detail *infra* in in considering the legislative history, such purpose is to set forth preconditions to filing a case, *i.e.* conditions that must be met in order for a case to be commenced. Put another way, section 109(h) of the Bankruptcy Code is said to define the eligibility to become a debtor. Read in conjunction with section 301 of the Bankruptcy Code, these suggestions are understandable. *See* 11 U.S.C. § 301(a). Nonetheless, section 109 requirements are not jurisdictional and do not bar at the courthouse steps a party who is purportedly ineligible. *Hamilton Creek Met. Dist. v. Bondholders Colorado Bondshares (In re Hamilton Creek Met. Dist.)*, 143 F.3d 1381, 1385 n.2 (10th Cir. 1998); *Montgomery v. Ryan (In re Montgomery)*, 37 F. 3d 413, 415 n.5 (8th Cir. 1994); *Promenade Nat'l Bank v. Phillips (In re Phillips)*, 844 F.2d 230, 235 n.2 (5th Cir. 1988).

Cases commenced by such parties are not nullities. *In re Ross*, 338 B.R. 134, 138-39 (Bankr. N.D. Ga. 2006); *In re Flores*, 291 B.R. 44, 52 (Bankr. S.D.N.Y. 2003). While such cases may later be dismissed on eligibility grounds, during the pendency of the case, the automatic stay and other essential protections apply, and should the case be dismissed, a subsequent case will be affected thereby. *See, e.g.,* 11 U.S.C. § 362(c)(3) & (4). Whether a petition is filed the minute before or the minute after credit counseling is obtained will always be heard at a later date in the case so commenced, at which point the criteria of eligibility will either have been satisfied or not. Put another way, while such conditions might define who may *remain* a debtor once considered by the court, they do not define who may *become* a debtor. For these reasons, the court sees no principled reason to ignore the plain language of the statute's text in favor of its heading.

BLACK'S LAW DICTIONARY 452 (9th ed. 2009). Moreover, Black's Law Dictionary defines "day" as "[a]ny 24-hour period; the time it takes the earth to revolve once on its axis ... ." *Id.* at 453.

The Supreme Court has, in the context of determining calculation of time periods for tax assessments following filing of returns, concluded that both days and dates envision indivisible time periods (either as a single point in time or as viewed as an indivisible entirety). *Burnet v. Willingham Loan & Trust Co.*, 282 U.S. 437, 439 (1931). As the Court stated, "[t]he fiction that a day has no parts is a figurative recognition of the fact that people do not trouble themselves without reason about a nicer division of time." *Id.* at 440; *see also Richardson v. Ford*, 14 Ill. 332, 333 (Ill. 1853) ("Where an act is to be done on a particular day, the party has the whole of that day in which to perform it.").

The language of section 109(h)(1) is expressed in plain terms. The 180-day period of a debtor to receive credit counseling includes the date of the filing of the petition. No finer distinction is included in the statute, and thus, the court is bound to apply the clear and unambiguous language of the statute pursuant to its terms. As the Debtor in this case obtained his credit counseling on the date of the filing of his bankruptcy petition, that credit counseling – though taken after the filing of the petition – satisfies the express terms of section 109(h)(1). As such, the Debtor is entitled to be a debtor and on these grounds the Trustee's Motion is not well taken.

B.  Counterarguments and Contrary Case Law.

Given the court's conclusion as stated above, further discussion is, perhaps, unwarranted. However, as the court has discussed certain of the counterarguments in footnote 1 above and there exists at least one case that has held the opposite of today's determination, the court feels compelled to address some additional arguments that have been or could have been made.

1.  *Congressional Intent*

Perhaps the strongest argument in favor of dismissing a case where credit counseling is obtained on the date of the petition but after the petition is filed is found in the history of the statute. In partial reliance on that history, another bankruptcy court has analyzed the statute under facts nearly identical to those at bar and concluded that dismissal is appropriate. *See In re Soohyun Koo*, No. 12-00121, 2012 WL 692578 (Bankr. D.D.C. Mar. 2, 2012); *see also In re Francisco*, 390 B.R. 700, 703-04 (10th Cir. BAP 2008) (holding that under pre-amendment section 109(h), the term date must mean the precise moment of filing).

It is true that the reports accompanying the Bankruptcy Abuse and Consumer Protection Act of 2005 identify the need to require "debtors to receive credit counseling before they can be eligible for bankruptcy relief so they will make an informed choice about bankruptcy, its alternatives, and consequences." H.R. Rep. No. 109-31(I), at 2 (April 8, 2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 89. Such materials further state that participation "before filing for bankruptcy relief" is anticipated, and that the purpose is to afford debtors "an opportunity to learn about the consequences of bankruptcy ... before they decide to file for bankruptcy relief." *Id.* at 18, 104.

As stated by Judge Squires of this court, Congress intended to discourage the practice of hastily filing bankruptcy petitions by "forcing debtors to 'obtain their required counseling at a point in time far enough in advance of filing that they would at least be educated as to the consequences of bankruptcy.'" *Gossett*, 369 B.R. at 371 (interpreting pre-amendment section 109(h)(1).

Be that as it may, the court cannot conclude that the language of the text as presently drafted is ambiguous. The *Koo* court found no such ambiguity, despite its analysis and partial reliance on legislative history. The *Francisco* court found ambiguity in the pre-amendment text, but only, it appears, extrinsic ambiguity. *Francisco*, 390 B.R. at 703-04 (citing other uses of the term "date" in the Bankruptcy Code where it appears Congress intended instead to mean "moment of filing"). As the court has been cautioned, however, "judicial surgery" of the kind entertained when seeking to remedy external ambiguity is not warranted when a plausible and unambiguous internal reading is available. *In re Draiman*, 714 F.3d 462, 466 (7th Cir. 2013).

Without such a conclusion, the clear language of the statute controls, regardless of Congress's intent. *United States v. Lorenzetti*, 467 U.S. 167, 178 (1984) ("However useful ... statements of congressional intent may be in resolving ambiguities in the statutory scheme, they are not a license to ignore the plain meaning of a specific statutory provision.").

2.  *The Tense of the Verb*

The *Koo* court did, prior to entertaining the legislative history, analyze the structure of the statute. In so doing, as noted above, the court did not find ambiguity. In fact, the *Koo* court found that use of past tense in the statute supported its reading that credit counseling is a pre-condition to filing. *Soohyun Koo*, 2012 WL 692578, at *2. The opinion states,

> Section 109(h)(1) requires that the debtor "has ... received" credit counseling (instead of requiring that the debtor "receives" credit counseling) during the 180–day period ending on the date of filing of the petition. The statute's use of past tense contemplates credit counseling obtained *before* the moment at which eligibility is tested, the moment of filing of the petition.

*Id.* (emphasis in original). The statute is not in the past tense ("received"), however. It is in the present perfect ("has received"). R. Huddleston & G.K. Pullum, THE CAMBRIDGE GRAMMAR OF THE ENGLISH LANGUAGE 143 (2002). Unlike the simple past tense, which generally points to single occurrences in the past that are completed, the present perfect may be used to denote both past and present time. The present perfect is concerned "with a time-span beginning in the past and extending up to now. It is not used in contexts where the 'now' component of this is explicitly or implicitly excluded." *Id.*

Even though it might appear that the use of the present perfect supports the court's conclusion, such support is not necessary as neither of the past or the present perfect would make the statute ambiguous. Regardless of whether Congress had used the past or the present perfect, when considered in light of the defined period within which the action must have occurred, the result is the same. Either tense would suffice, as it is the period defined by Congress that provides the crucial meaning, not the tense.

As noted above, the plain language of that period includes all of the day on which the petition is filed. There is no ambiguity there.

    3.    *The Other Provisions of Section 109(h)*

A closer examination of the other subsections of section 109(h) shows that Congress, in implementing the credit counseling provisions contained therein, did not effectuate a consistent scheme of prepetition counseling.

Section 109(h)(4) sets forth an exemption to the credit counseling requirement that applies to those unable to receive credit counseling due to "incapacity, disability, or active military duty in a military combat zone." 11 U.S.C. § 109(h)(4). That is, in and of itself, not inconsistent with a reading that section 109(h)(1) requires prepetition credit counseling.

Section 109(h)(3), which provides for a temporary abatement of the credit counseling requirements, is however inconsistent with such a reading. In this section, Congress states that "the requirements of paragraph (1) shall not apply" if a debtor can certify satisfactorily to the court that "exigent circumstances" exist meriting a waiver and that the debtor requested credit counseling but was unable to obtain said services within a seven-day period beginning on the date of the request. 11 U.S.C. § 109(3)(A). Though described as an exemption, section 109(h)(3) actually creates a temporary abatement. The debtor receiving relief under section 109(h)(3) must still complete the credit counseling, albeit after the filing of the petition. The abatement ends in 30 days (or 45 if extended by the court for cause), or on the debtor having completed credit counseling, if earlier. 11 U.S.C. § 109(3)(B).

If Congress solely intended debtors to obtain credit counseling so as to make pre-bankruptcy decisions, section 109(h)(3) serves no purpose. The stated goal could not possibly furthered by section 109(h)(3), and only section 109(h)(1) and (h)(4) would be appropriate. Congress must have seen value in postpetition credit counseling, or section 109(h)(3) would not exist.

Further, the wording of section 109(h)(3) is inconsistent with a strict reading of section 109(h)(1). Section 109(h)(3) states that the abatement shall "cease to apply ... on the date on which the debtor meets the requirement of [section 109(h)(1)]." Without the benefit of a time machine, a debtor could never comply with a prepetition requirement postpetition, and debtors afforded the abatement would still have their cases dismissed, albeit slightly later in time. The section 109(h)(3) temporary abatement would simply be a stay of execution. Section 109(h)(3) clearly requires some flexibility as to timing in section 109(h)(1) or the latter would be meaningless.[2]

While together sections 109(h)(1), (3) & (4) do reflect a clear intention that most individuals receive credit counseling, taken together, that is all they reflect.

---

[2] Even the timing of section 109(h)(3) is problematic. Section 109(h)(3) appears to only apply when a debtor is only able to obtain credit counseling within seven days after making the request. But what if the debtor makes the request the morning of a filing? How does that seven-day period calculate in such instances? Presume the counseling is available the next day (postpetition), which is within seven days. Is the debtor therefore excluded from section 109(h)(3) relief as the strict requirements of section 109(h)(3)(ii) are not met, but such debtor is unable to take the credit counseling per section 109(h)(1)? Again, some flexibility is required here, lest debtors be denied the essential assistance offered by bankruptcy on a technicality.

    4.    *Recent Amendments to Section 109(h)(1)*

In 2010, Congress amended the language of section 109(h)(1). Prior to amendment, phrase in question read "***preceding** the date of the filing of the petition.*" This language, however, erred in the opposite direction of the present language. The express wording of the pre-amendment section dictated that a debtor complete the credit counseling requirement, at the latest, the day before the filing of the petition. *Gossett*, 369 B.R. at 371. Debtors who obtained credit counseling on the day of the petition were found to be ineligible. As noted above, such a reading was, however, not inconsistent with Congress's presumed goal of "forcing debtors to 'obtain their required counseling at a point in time far enough in advance of filing that they would at least be educated as to the consequences of bankruptcy.'" *Id.* (*quoting In re Cole*, 347 B.R. 70, 77 (Bankr. E.D. Tenn. 2006)).

Yet Congress clearly disagreed, and amended section 109(h)(1) to its present language. Such amendment appears to have been for the express purpose of defeating holdings such as *Gossett*.

The existence of the amendment actually weakens the congressional intent argument, however. Under cases such as *Gossett*, a period of contemplation following the taking of the credit counseling was mandatory. Congress expressly amended away any such period of contemplation in 2010. Even under the more restrictive reading of "date" as the moment of filing of the petition, no period of contemplation need exist under the present statute. One debtor might file a petition a mere instant after obtaining the counseling, with no time for contemplation having occurred, while another debtor might file the petition an instant after. How are such debtors substantively different? Reading section 109(h) restrictively would separate two nearly identical debtors on nothing other than a technicality. No policy goal would be achieved.

It is, of course, possible that Congress intended to bar the second such debtor from the protections of bankruptcy on a mere technicality. But the existence of such a possibility puts paid to any argument that Congress's intent should govern. No clear congressional intent exists post the 2010 amendments, and such intent could not in any case override the clear language of the statute. There is no justification for going beyond the clear language of the statute, and likewise no reason to muddle that clear language with fabricated constructs of timing. *Pioneer*, 507 U.S. at 388; *Burnet*, 282 U.S. at 440.

The existence of the amendment is also notable as it is clear that, in so amending the statute, Congress was aware of possible misreadings of the timing. In making the amendment, Congress could have chosen more precise wording. Either "ending on the date and time of the filing of the petition" or "ending with the filing of the petition" or "ending at the moment of filing" would have furthered Congress's presumed intent. Congress, in drafting the companion counseling section noted earlier, did in fact choose such precise language. In establishing the time period for obtaining postpetition counseling, Congress expressly stated that such period begins "after filing of the petition." 11 U.S.C. § 1328(g)(1). Congress used similar phrasing in section 109(h)(3). In neither case did Congress choose the broader phrase "date of the petition."

Congress showed in each case that it is not constrained from using more precise language. But Congress did not choose language of such precision in section 109(h)(1).

The existence of the 2010 amendment serves to underscore that, in light of the importance of the right to avail oneself of bankruptcy relief, *Wright*, 311 U.S. at 279, reading Congress's plain,

unambiguous choice of language in section 109(h)(1) as something other than plain for the mere sake of effectuating Congress's presumed intent, would be incorrect.

    5.    *The Petition Form*

It could also be argued that the existing bankruptcy petition form also supports the reading of section 109(h)(1) as permitting only prepetition credit counseling.

It is true that the existing form does not contemplate a circumstance where a debtor does not have credit counseling but will obtain it without seeking the waiver provided in 109(h)(3) after filing the petition. It is also true, therefore, that the plain language of section 109(h)(3) is at odds with the petition form.

While that is unfortunate, it points to an issue with the form, not the statute. Bankruptcy "forms, rules, treatise excerpts, and policy considerations … must be read in light of the Bankruptcy Code provisions that govern …, and must yield to those provisions in the event of a conflict." *Schwab v. Reilly*, 560 U.S. 770, __ n.5, 130 S.Ct. 2652, 2660 n.5 (2010).

## CONCLUSION

For all of the foregoing reasons, the court finds that the Debtor has complied with 11 U.S.C. § 109(h)(1). For that reason, the Motion is not well taken and should be denied. A separate order to that effect will be entered by the court.

Dated: December 9, 2013

_____
Timothy A. Barnes
United States Bankruptcy Judge